JAMES ERWIN, APPELLANT v. HUGH M. BLAKE, APPELLEE.

22

The case was argued by Mr Hardin, for the appellant; and by Mr Bell, for the appellee.

Mr Hardin contended,

Mr Bell, for the appellee,

24

Mr Justice STORY delivered the opinion of the Court.

The principal question in the case is, whether the plaintiff, Blake, has entitled himself to a re-conveyance of the land in controversy against the judgment creditor, Erwin ; the same land having been sold upon execution, and being, by the laws of Tennessee, redeemable by the owner at any time within two years after the sale : and that question turns upon this, whether the judgment has been according to those laws duly discharged within the two years by the judgment debtor. It is clear from the evidence, that Fulton, as attorney of Erwin, did give a receipt discharging the whole of the claim under the judgment, amounting, on the last day, when the land was redeemable, to one thousand five hundred and one dollars and seventeen cents : and if he either had an original authority so

to do, or his acts have since been confirmed by Erwin, then Blake is entitled to the relief sought by the bill.

It is material, in the first place, to state, that the original demand on which the judgment was rendered, was, before the suit was brought, assigned by Erwin to one M'Connell ; and that the suit was commenced and carried on through all its stages by Fulton, for and under the direction of M'Connell, although in the name of Erwin : and the latter never interfered in the suit until after the judgment had, by the redemption of Brittain's prior judgment, been levied, and fixed as a lien on the land. Now, it cannot be doubted that if the assignment to M'Connell was never rescinded, he alone had a right to control the judgment and the levy, and the subsequent proceedings as to the redemption by Blake. And in point of fact, he was not only connusant of, but party to the arrangement made by Fulton with Blake, by which the judgment claim against the land was discharged. Was then the assignment antecedently rescinded? Erwin in his answer affirms that it was, but the evidence in the cause does not support his averment : on the contrary, it is established by Erwin's own acknowledgement, in his letter of the 6th of September 1826, that M'Connell continued to have an interest in it until long after all these transactions ; and M'Connell, in his testimony, asserts his own claim in the most positive manner : so that, at most, the case cannot be judicially treated as one where there had been a total rescision of the assignment; but only subsequent negotiations, out of which other equities connected with it arose between the parties.

But, assuming that the assignment had been rescinded, still it is clear that Erwin adopted the acts of M'Connell in regard to the suit, and recognized Fulton as his attorney in the conduct of it. He never repudiated him as his attorney, and never gave any notice to Blake that he had not as complete authority in the premises as any other attorney in the management of a suit at law. Now it is not denied that an attorney at law, in virtue of his general authority as such, is entitled to take out execution upon a judgment recovered by him for his client, and to procure a satisfaction thereof by a levy on lands or otherwise, and to receive the money due on the execution ; and thus to discharge the execution. And if the judgment debtor has a

right to redeem the property sold under the execution within a particular period of time, by payment of the amount to the judgment creditor, who has become the purchaser of the property, there is certainly strong reason to contend that the attorney is impliedly authorized to receive the amount, and thus indirectly to discharge the lien on the land. At least, if (as is asserted at the bar) this be the common course of practice in the state of Tennessee, it will furnish an unequivocal sanction for such an act.

But it is not necessary in the present case to rely on this ground, if Erwin did in fact give an express general authorty to Fulton to act in the premises, or if he has since ratified the acts of Fulton in discharging the judgment. Some of the judges are of opinion, that the evidence in the case establishes that Erwin expressly delegated to Fulton general authority to act in the premises, and to receive the money due under the judgment, according to his own discretion ; and that the direction of Erwin to Fulton to demand the payment in specie, was not intended to operate as a positive restriction upon that discretion, but was merely a strong expression of the wishes of Erwin on the subject. Fulton, in his deposition, states, that Erwin " called upon Kincannon to bear witness that he had appointed me his attorney in the business, and that I was authorized to receive the money upon the claim ; and that whatever I should do upon the subject, he would abide by." Kincannon fully confirms this statement in his deposition ; and says, " Mr Erwin did call on me to bear witness that Mr Fulton was fully authorized to transact the whole business for him. From all that was said by Mr Erwin, I did believe that any course taken by Mr Fulton would be sanctiond by him, and that he would be bound to all intents and purposes by his acts." And he adds, in another place, " it was my understanding, and I thought from all that was said by Mr Erwin, that it was so understood by himself and all others present, that Mr Fulton was fully authorized to act for Mr Erwin in relation to the whole matter. Mr Erwin did say, that he would ratify or sanction Mr Fulton's acts, or words of that import." The conversation here detailed is a part of the same conversation between the parties, in which the direction was given by Erwin to Fulton to demand specie in payment ; and therefore it

may properly be taken into consideration as a qualification of that direction.

Others of the judges are of opinion, that, taking the fair scope of the language of Erwin in his letters to Fulton after the transaction, it amounts to a ratification of the acts of Fulton. Thus in his letter of the 8th of September 1826, written after M'Connell (as it admits) had given him information of what had been done, he says, " this of course is not a compliance with the law, and I am induced to think they cannot now have even a probable right to claim the land, as the deed is now in my name. They cannot claim any indulgence granted by any one except you and myself, no one else having authority to grant any. *Whatever you may* [have] *authorized others to do in your absence, in accordance with my instructions, or yours, of course will be adhered to by me ; but nothing more."* Now, these expressions are very significant as to the extent of the original authority given to Fulton. They show that specie was not absolutely to be insisted upon, or payment at the time absolutely required ; for it is admitted, that indulgence might be granted by Fulton ; " no one else having authority to grant any." And as to the point of ratification, the language is still more direct, for it is declared that whatever had been done in Fulton's absence, in accordance with his instructions, would be adhered to. Now, at this time, Fulton had ratified all Porterfield's acts, and indeed, except as to the giving time for a small part of the money, Porterfield had not deviated from his original instructions. On the 9th of September Fulton wrote to Erwin, giving him a full account of all the transactions, and why he had deviated " from the strict letter of his instructions." And he also sent to Erwin the one thousand three hundred and five dollars received by him ; and offered to pay him the remaining sum of two hundred dollars then due. In the reply of Erwin to this letter, on the 12th of September, he declines receiving the money, for reasons, which (he says) he will explain, when he has the pleasure to see Fulton ; and adds, " my course I am sure, on explanation, will be satisfactory to you, major Porterfield and to M'Connell." But he no where in that letter expresses any disapprobation of the conduct of Fulton ; and he does not attempt to qualify the language of his former letters, or to disavow the acts of Fulton as a breach of his instruc-

tions. His object seems to have been, without returning the money to Fulton or to Blake, or doing any positive act, to retain the whole affair in its then state, that he might make use of any doubts as to the extinguishment of his claim, for his own advantage in other business. "The judgment" (says he) "is in my name, and I alone can control it. I am fully aware of the hold I now maintain over Garner, or rather over Blake's land, and I am determined to use it towards the security of my other claims." Under these circumstances, the evidence is deemed fairly to establish the conclusion, that the acts of Fulton were ratified by Erwin; and never were intended to be repudiated by him. Upon these grounds, and for these reasons, it is the opinion of the court, that the plaintiff is entitled to the relief sought by his bill. But it ought not to be granted, except upon the terms, that all the money due at the time when the land was redeemed by the plaintiff, should be paid over to the debtor. The balance of two hundred dollars does not appear ever to have been paid by Dickson; and the one thousand three hundred and five dollars and seventeen cents, for aught that appears in the record, is still in the hands of Talbert, and never has been received by Erwin. The decree of the circuit court, granting relief, must therefore be varied, so far as to make it dependent upon the payment of the whole one thousand five hundred and five dollars and seventeen cents to Erwin.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of West Tennessee, and was argued by counsel : on consideration whereof, it is ordered, adjudged and decreed by this court, that upon the full payment by the said Blake, of the sum of one thousand five hundred and five dollars and seventeen cents, due on the judgment of the said Erwin against the said Blake, as in the proceedings mentioned, or so much thereof as has not been already received by the said Erwin in satisfaction thereof—the said money to be paid to the said Erwin personally, or brought into the circuit court for his use ; all the estate, right, title and interest in the said tract of land, in the proceedings mentioned, which was vested in the said Erwin by the deed executed to him by James Brittain, bearing date the 21st day of August

1826, in the proceedings mentioned, and under and in virtue of the judgment of the said Erwin, levied on the same as in the same proceedings mentioned, ought to be, and hereby is, declared to be restored to, and revested in him, the said Blake, and his heirs and assigns, in the same manner as if the same tract of land had not been sold to satisfy the judgment of the said Brittain in the proceedings mentioned. And it is further ordered, adjudged and decreed, that the said Erwin, upon the payment of the said money as aforesaid, do forthwith, by a suitable deed and conveyance, convey the same estate, right, title and interest, in and to the same tract of land, to the said Blake and his heirs and assigns accordingly. And it it is further ordered, adjudged and decreed, that upon the payment of the said money as aforesaid, all further proceedings in the action of ejectment brought for the recovery of the said tract of land in the proceedings mentioned be, and the same are hereby perpetually stayed and enjoined; and that in the meantime, and until such payment, no further proceedings be had in the said action. And it is further ordered, adjudged and decreed, that the decree of the circuit court, so far as it differs fron this decree be, and the same is hereby reversed, and that in all other respects it be, and is hereby affirmed : and that this cause be, and the same is hereby remanded to the circuit court for further proceedings, to carry the present decree into effect.