**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**AN ARTICLE OF DRUG . . . "BENTEX ULCERINE", etc.,**
**Defendant-Appellant.**

**No. 72–2348**
**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1972.

* Rule 18, 5 Cir., see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

George F. Townes, Greenville, S. C., Jerome R. Epstein, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Olney G. Wallis, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

PER CURIAM:

The judgment of the District Court is affirmed on the basis of Judge Connally's Memorandum Opinion which is hereunto attached as an Appendix.

Affirmed.

## APPENDIX

### MEMORANDUM AND ORDER:

This is a seizure action brought under section 304 of the Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 334, to condemn a quantity of the drug Ulcerine and a quantity of concentrate used in the manufacture of Ulcerine. Cause No. 70–H–880 was filed August 17, 1970, and Cause No. 71–H–31 was filed January 13, 1971. Each action alleges, in essence, that Ulcerine is a new drug which may not be shipped in interstate commerce without prior approval of the new drug application required by 21 U.S.C.A. § 355. Bentex Pharmaceutical Company, Houston, Texas, intervened and filed claims and answers in both cases. The cases were found to involve common questions of fact and law and were consolidated under Rule 42(a) Fed.R.Civ.P. The matter was tried to the Court on October 18, 1971.

Ulcerine is a prescription drug[1] for human use in the treatment of peptic ulcers, owned and distributed by the Bentex Pharmaceutical Company. The shipments seized in this action were in interstate commerce.[2] The formula and labeling[3] for the drug Ulcerine are the same as the formula and labeling for the drug De-Nol. Ulcerine is merely another trade name for De-Nol. The name Ulcerine has been used by the claimant Bentex Pharmaceutical Company in distributing the drug in the United States since 1968. Prior to 1968 Sharina Pharmacal Company, Memphis, Tennessee, imported and distributed De-Nol for De-Nol Laboratories, Ltd. of Johannesburg, South Africa.

De-Nol Laboratories, Ltd. is the original owner and source for both De-Nol and Ulcerine. The claimant pays De-Nol Laboratories a royalty for use of the formula in manufacturing Ulcerine.

De-Nol was first marketed for the treatment of peptic ulceration in 1946 in South Africa and elsewhere outside the United States. De-Nol was first marketed in the United States in 1953 and has been regularly marketed here since 1959. Prior to October 9, 1962, and thereafter, De-Nol was marketed by the Sharina Pharmacal Company, Memphis, Tennessee. Since 1968 it has been marketed by the claimant under the trade name Ulcerine.

### ISSUES

If Ulcerine is a "new drug" (as defined in § 321(p) of 21 U.S.C.A.), it may not be introduced or shipped in interstate commerce without an approved new drug application required by 21 U.S.C.A. § 355. In such case plaintiff's seizure was proper under 21 U.S.C.A. § 334; it is undisputed there is not now, nor has there ever been, an approved new drug application for Ulcerine or for De-Nol.[4]

Claimant contends (1) that Ulcerine is not a "new drug" as defined by the Act; and (2) that Ulcerine is entitled to the protection of the "Grandfather Clause" of the 1962 Drug Amendments Act, Section 107(c)(4) of Public Law 87–781. If Ulcerine is an old drug or a "grandfather" drug, it is entitled to be shipped in interstate commerce without prior approval of a new drug application, and plaintiff's seizure was improper.

### THE APPLICABLE STATUTES

A new drug is currently defined in 21 U.S.C.A. § 321(p) as follows:

"(p) The term 'new drug' means—

"(1) Any drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by specific training and experience to evaluate the safety and effectiveness of drugs,

---

1. The parties stipulated Ulcerine is a prescription drug as defined in the Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq.

2. The parties so stipulated.

3. The parties stipulated the labels on the bottles of Ulcerine, the package inserts, and the cartons, constitute "labeling" as defined in 21 U.S.C.A. § 321(m).

4. Stipulated by the parties.

as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a 'new drug' if at any time prior to the enactment of this chapter it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representation concerning the conditions of its use; . . . ."

On October 10, 1962, the Kefauver-Harris Amendments (Public Law 87–781), known as the Drug Amendments Act of 1962, became effective. This legislation changed the pre-existing definition of a new drug by adding the words "and effectiveness" and the words "and effective" to the present definition. Therefore from 1938 to 1962 an "old drug" was one generally recognized by qualified experts as safe for its intended uses. There was no requirement that an old drug generally be regarded as effective.

The Drug Amendments Act of 1962 contained a "Grandfather Clause", which exempted certain drugs from the "effectiveness" requirement of the new definition, if no new claims of efficacy were made. It reads as follows:

"(4) In the case of any drug which, on the day immediately preceding the enactment date, (A) was commercially used or sold in the United States, (B) was not a new drug as defined by section 201(p) of the basic Act as then in force (subsec. (p) of this section), and (C) was not covered by an effective application under section 505 of that Act (section 355 of this title), the amendments to section 201(p) (subsec. (p) of this section) made by this Act shall not apply to such drug when intended solely for use under conditions prescribed, recommended, or suggested in labeling with respect to such drug on that day."

(Pub.L. 87–781, § 107(c)(4), 21 U.S.C.A. note following § 321.)

■ Thus, if Ulcerine is *presently* regarded by qualified experts as both *safe and effective* for its intended uses, it is not a new drug. 21 U.S.C.A. § 321(p) AMP Inc. v. Gardner, 389 F.2d 825 (2nd Cir. 1968), cert. den. sub nom. AMP Inc. v. Cohen, 393 U.S. 825, 89 S. Ct. 86, 21 L.Ed.2d 95 (1968). If Ulcerine (De-Nol) was generally regarded by qualified experts *on October 9, 1962* (the effective date of the "Grandfather Clause" exemption), as *safe* for its intended uses it is a "grandfathered" drug and not a new drug. Drug Amendments Act of 1962, Pub.L. 87–871 Section 107(c)(4), 21 U.S.C.A. note following § 321; Tyler Pharmacal Distributors, Inc. v. U. S. Department of Health, Education and Welfare, 408 F.2d 95 (7th Cir. 1969).

### IS ULCERINE A "GRANDFATHERED" DRUG?

■ The government must prove by a preponderance of the evidence that Ulcerine is a new drug. United States v. Articles of Drug Labeled "Quick-O-Ver", 274 F.Supp. 443 (D.Md.1967); see also United States v. . . . Unitrol, 325 F.2d 513 (3rd Cir. 1962). However, the "Grandfather Clause" is to be strictly construed against the one who invokes its protection. United States v. Allan Drug Co., 357 F.2d 713 (10th Cir. 1966), cert. den. 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966). The claimant Bentex must prove every essential fact necessary for invocation of the exemption. See: United States v. First City Natl. Bank of Houston, 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967); Rheem Mfg. Co. v. Rheem, 295 F.2d 473 (9th Cir. 1961); United States v. Bodine Produce Co., 206 F.Supp. 201 (D.Ariz.1962).

■ The claimant's evidence shows De-Nol[5] was distributed to only a very

5. Later "Ulcerine".

limited extent before October 9, 1962. Between 1958 and June 30, 1963, a total of only four thousand bottles were imported. This statistic becomes significant when considered in light of the statutory term "generally recognized". As stated in United States v. 7 Cartons . . . Ferro-Lac, 293 F.Supp. 660, 662, 663 (S.D.Ill.1968), modified on other grounds 424 F.2d 1364 (7th Cir. 1970):

"The statute provides a test of general recognition. The rule stated in *Merritt* [Merritt Corp. v. Folsom, D. C., 165 F.Supp. 418] and subsequent cases would equate the statutory language, 'generally recognized' to 'unanimously recognized.' There is no justification for such equation. There is nothing in the statute to indicate that Congress intended 'generally recognized' in other than its commonly understood meaning. The adverb, 'generally,' is defined, inter alia, to mean, 'In general; extensively, though not universally; most frequently, but not without exception; * * *.' Webster's New Twentieth Century Dictionary, Unabridged, 2nd Ed."

Claimant's evidence on this issue is not impressive. At best, it tends to show that the drug was used, prescribed and enthusiastically endorsed by a few physicians in Memphis, Tennessee (including the importer); and sold to no more than perhaps 150 to 200 doctors in some two or three neighboring states.

Bearing in mind that the test is whether the drug was *generally recognized* as safe on the date in question (not whether in fact it *was* safe), AMP Inc. v. Gardner, *supra*, I am simply unable to find its use or reputation was sufficiently widespread at that time as to qualify.

## IS ULCERINE A "NEW DRUG"?

Again, the question raised is one of general recognition—is Ulcerine *generally recognized* by experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as *safe and effective* for use under the conditions prescribed, recommended, or suggested in the labeling thereof. AMP Inc. v. Gardner, *supra;* Tyler Pharmacal Distributors, Inc. v. U. S. Dept. of Health, Education and Welfare, *supra*. On this issue the government has the burden of proof by a preponderance of the evidence. United States v. Articles of Drug Labeled "Quick-O-Ver," *supra*.

On this issue the claimant presented a much stronger case. While the matter is not at all free of doubt, again, however, I am of the view and find that the government has the better of it.

The claimant's testimony shows (from the president of claimant corporation, and sales representative of a drug firm) that since 1968 Ulcerine (a) has been sold in all fifty states; (b) has been used and prescribed by about 2,000 separate doctors; (c) sales have averaged about 2,000 bottles per month, which indicates (d) that about 1,000 patients per month have used it.

Additionally, claimant has presented some six doctors, both physicians and surgeons. The physicians testified essentially that each of them had used the drug when the more accepted and recognized remedies had failed; and that the results had been startling, even dramatic in some cases. Each was an enthusiastic advocate of its virtues. The surgeons testified that they had resorted to surgery with much less frequency than formerly, and attributed their many non-surgical cures to the Ulcerine treatment. Some of these witnesses were quite impressive.

The government, on the other hand, offered a number of doctors with outstanding credentials. Their testimony was essentially to the effect that they had only recently learned of Ulcerine; that the drug had not been the subject of carefully controlled laboratory experimentation, and that there was a dearth of scientific literature on the subject. It had not been widely discussed at medical meetings and gatherings of physicians and scientists. For this reason

they were skeptical of the drug, and would not themselves prescribe it. By reason of these facts they did not consider it generally recognized as "safe and effective."

■ The government urges strongly that the admitted fact that laboratory testing and experimentation has been very limited and articles appearing in medical journals and periodicals almost non-existent is itself enough to show that the test has not been met. I am not prepared to accept this at face value [United States v. 41 Cases, More or Less, 420 F.2d 1126 (5th Cir. 1970)]. It is, however, persuasive. Certainly it is not unreasonable that if a drug is generally recognized as safe and effective, one would find in the medical literature over a period of years support for this premise from wide experimentation and study.

I drew the impression from the claimant's medical witnesses that each considered himself something of a pioneer in his use and advocacy of this medication. Each had talked to his fellow physicians and associates about it, but I drew the impression that until such discussions these associates were unfamiliar with the drug.

■ Thus, I think it may be said that the claimant's evidence shows at best that while sales and popularity of the drug have increased rather drastically —while it is advocated by a number of physicians who strongly espouse its use in preference to other more accepted measures, I am of the view that it still falls short of being *generally recognized* as safe and effective by those qualified in the field.

Thus, I am of the view that Ulcerine is a new drug within the meaning of the statute and that it is not protected by the "Grandfather Clause". It, therefore, was subject to forfeiture and condemnation.

Counsel for the government will prepare an appropriate order, submit same to opposing counsel for approval as to form, and hand same to the Court promptly. The foregoing shall constitute Findings of Fact and Conclusions of Law.

The clerk will file the Memorandum and Order and furnish true copies hereof to the appropriate parties.

Done at Houston, Texas, this 20th day of April, 1972.

> BEN C. CONNALLY
> United States District Judge