**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**William C. SCRIMGEOUR,**
**Defendant-Appellee.**

No. 80–5205.

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 12, 1981.

Rehearing and Rehearing En Banc
Denied March 16, 1981.

Charles C. Murphy, Jr., Atty., Antitrust Div., U.S. Dept. of Justice, Atlanta, Ga., John J. Powers, III, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Joseph Mincberg, Miami, Fla., for defendant-appellee.

1. 18 U.S.C.A. § 1623 provides in pertinent part:
 (a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both. . . .

2. 18 U.S.C.A. § 1623(d) provides in pertinent part:

Before MORGAN, FAY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

The Government appeals from the district court's dismissal of a five-count indictment charging William Scrimgeour with knowingly making false material declarations before a grand jury in violation of 18 U.S.C.A. § 1623.[1] The district court granted Scrimgeour's motion to dismiss the indictment, ruling that prosecution was barred by the recantation provision of 18 U.S.C.A. § 1623(d).[2]

Scrimgeour made material declarations under oath before a grand jury and subsequently reappeared and admitted those declarations to be false. He first testified before the grand jury, which was investigating price fixing in the southern Florida bond paper market, on June 16, 1977. His testimony contradicted that given by a prior witness, David Boynton, who had testified that Scrimgeour attended price fixing meetings. For that reason, Scrimgeour was twice warned by the Government attorney of the penalty for perjury and given an opportunity to change his answers. Scrimgeour declined at that time to change his testimony. On July 27, 1977, Michael Nachwalter, Scrimgeour's attorney at that time, contacted a Government attorney concerning Scrimgeour's possible perjury and requested that the Government provide a copy of Scrimgeour's grand jury testimony. That request was refused on the ground

 (d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

that grand jury proceedings are secret under Fed.R.Crim. P. 6(e). On August 12, 1977, Nachwalter again requested that the Government attorneys allow Scrimgeour to view a transcript of his testimony, but the Government again refused on the ground that a court order would be required under Rule 6(e).

On September 15, 1977, another witness, Joe Lincks, reappeared before the grand jury and testified, in contradiction to Lincks' prior testimony given in March 1977, that Scrimgeour had attended price fixing meetings. A few hours after Lincks testified on September 15, Scrimgeour's counsel called a Government attorney and stated that he knew that Lincks had been a "songbird" before the grand jury. In October 1977, Scrimgeour's new attorney, James Hogan, contacted Government counsel and stated "that Scrimgeour had lied" and that he "wanted him to go back to the grand jury and straighten it out." Hogan also requested a copy of the grand jury transcript but the Government again refused on the ground that a court order would be required under Rule 6(e). Hogan then filed a motion to compel disclosure of the transcript, which was granted on November 7, 1977, after a hearing on that motion. At that hearing Hogan conceded that "even if we appear and recant under 1623 the Government can still indict him for perjury under 1621 and 1623 if they so wish. . . ." Later that day on November 7, Scrimgeour reappeared before the grand jury, admitted his prior false statements, and corrected his testimony.

The grand jury before which Scrimgeour made his false statements and then recanted expired in December 1977, without returning an indictment for price fixing. However, a second grand jury did return an indictment in September 1978, to which Scrimgeour and other defendants pleaded *nolo contendere.*

The district court dismissed the perjury indictment on the basis of 18 U.S.C.A. § 1623(d), which provides that a person who recants or admits that he has made false declarations shall not be prosecuted for those declarations, "if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed." The district court held that "or" must be read in the disjunctive and not in the conjunctive, *i. e.,* if either of the two conditions of Section 1623(d) is satisfied, recantation bars prosecution. The district court decided in the alternative that both conditions were satisfied and thus prosecution of Scrimgeour was barred.

The United States Court of Appeals for the District of Columbia Circuit held in *United States v. Moore,* 613 F.2d 1029 (D.C. Cir. 1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980), that the word "or" in 18 U.S.C.A. § 1623(d) means "and." That court reviewed the legislative history of Section 1623 and concluded that Congress intended that a defendant be required to satisfy both conditions of subsection (d).[3] This Circuit specifically reserved this precise issue in *United States v. Beasley,* 550 F.2d 261, 266 (5th Cir.), *cert. denied,* 434 U.S. 863, 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977).

We are persuaded by *Moore.* Our reading of the legislative history convinces us that the court in *Moore* was correct in determining that despite the formulation of Section 1623(d) grammatically, the intent of Congress was that a defendant must satisfy both conditions of that subsection.[4]

The central purpose of Congress in enacting Section 1623 was to encourage truth telling to the maximum extent possible, at every step of the witness' testimony.[5] The *Moore* court turned to legislative history after determining that a literal interpretation of Section 1623(d) was unsatisfactory

---

**3.** 613 F.2d at 1039–40.

**4.** For an exhaustive discussion of the legislative history of Section 1623(d), see *Moore, supra,* 613 F.2d at 1039–45.

**5.** *See Moore, supra,* 613 F.2d at 1040, 1043.

because it would frustrate Congress' overriding goal in enacting that section by allowing a perjurer to avoid prosecution by merely recanting before his perjury adversely affected the proceeding, even after his perjury had been exposed.[6]

Section 1623(d) was modeled on a New York statute[7] and congressional treatment of the recantation provision reveals that the New York version was basically incorporated into Section 1623(d).[8] The *Moore* court reasoned that Congress would not have enacted a version of the recantation statute which differed so greatly from the New York version without explaining its intent and reasons in so doing.[9] On the basis of its examination of the legislative history, the *Moore* court concluded that "Congress did not countenance in Section 1623(d) the flagrant injustice that would result if a witness is permitted to lie to a judicial tribunal and then, upon only learning that he had been discovered, grudgingly to recant in order to bar prosecution."[10]

■ We must keep in mind several basic principles that relate to the construction of criminal statutes: A federal criminal statute should be construed narrowly in order to encompass only that conduct that Congress so intended to criminalize. *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979); *United States v. Dudley*, 581 F.2d 1193, 1197 (5th Cir. 1978). Although a criminal statute must be strictly construed, it must not be

construed so strictly as to defeat the clear intention of the legislature. *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976); *Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782 (1974); *United States v. Cook*, 384 U.S. 257, 262–63, 86 S.Ct. 1412, 1414–15, 16 L.Ed.2d 516 (1966). "The principle of strict construction 'does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature.'" *United States v. Levy*, 579 F.2d 1332, 1337 (5th Cir. 1980), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1243, 59 L.Ed.2d 471 (1979), *quoting United States v. Bramblett*, 348 U.S. 503, 510, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955).

■ A basic canon of statutory construction is that words should be interpreted as taking their ordinary and plain meaning. *E. g., Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199, 204 (1980). Although in interpretation of statutory language reference should first be made to the plain and literal meaning of the words, the overriding duty of a court is to give effect to the intent of the legislature. *Flora v. United States*, 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958); *United States v. Second National Bank of North Miami*, 502 F.2d 535, 539 (5th Cir. 1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). A statute should ordinarily be interpreted according to its plain language, unless a clear con-

6. *Id.* at 1041.

7. N.Y. Penal Law § 210.25 (McKinney 1965).

8. *Moore, supra*, 613 F.2d at 1042. During legislative hearings on the recantation provision of Section 1623(d), the Justice Department offered an interpretation of that section which expressly paralleled the conjunctive preconditions contained in the New York statute. *See id.* at 1042 & n.130. However, certain remarks during the legislative hearing indicate that there was some awareness that the proposed recantation legislation differed from the New York statute. *See id.* at 1042 & n.107.

9. The court stated:
 Had so drastic a departure from the New York statute as a switch from combinational to alternative satisfaction of its carefully de-

veloped preconditions been really intended, we believe Congress would have said so. Had Congress actually intended a nearly complete overruling, in the practical sense, of the Supreme Court's longstanding pronouncement on the serious drawbacks of recantation in the quest for truth, we would expect a much fuller explanation. Had Congress, after making crystal clear its purpose to promote truthtelling to the hilt, intended the almost wide-open door to prevarication that disinjunctive [sic] construction of the statutory preconditions would furnish, it hardly would have failed to elucidate its logic.
613 F.2d at 1042–43.

10. *Id.* at 1043.

trary legislative intention is shown. *United States v. Apfelbaum*, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250, 257 (1980). Although words should ordinarily be given their plain and ordinary meaning, that meaning must be in accord with the intent of the legislature. *United States v. Cook, supra*, 384 U.S. at 262–63, 86 S.Ct. at 1414–15; *United States v. Mississippi Valley Co.*, 364 U.S. 520, 550, 81 S.Ct. 294, 309, 5 L.Ed.2d 268 (1961); *Rainwater v. United States*, 356 U.S. 590, 593, 78 S.Ct. 946, 949, 2 L.Ed.2d 996 (1958); *United States v. Corbett*, 215 U.S. 233, 242, 30 S.Ct. 81, 84, 54 L.Ed. 173 (1909); *United States v. Bryant*, 563 F.2d 1227, 1230 (5th Cir. 1977), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1616, 56 L.Ed.2d 65 (1978). A court must construe a federal statute so as to give effect to the intent of Congress. *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *United States v. American Trucking Assns.*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Johnson v. Southern Pacific Co.*, 196 U.S. 1, 18, 25 S.Ct. 158, 161, 49 L.Ed. 363 (1904); *Craig v. Finch*, 425 F.2d 1005, 1008 (5th Cir. 1970).

"A criminal statute should be fairly construed in accordance with the legislative purpose behind its enactment." *United States v. Levy, supra*, 579 F.2d at 1337, *citing United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). *See Hattaway v. United States*, 304 F.2d 5, 8–9 (5th Cir. 1962). Criminal statutes are not to be interpreted in such a manner as to defeat or disregard the legislative purpose. *See United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978); *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976); *United States v. Corbett, supra*, 215 U.S. at 242, 30 S.Ct. at 84.

The Supreme Court has given somewhat inconsistent instructions concerning the propriety of use of legislative history where the meaning of the words is plain on the face of the statute.[11] In *TVA v. Hill*, 437 U.S. 153, 184 n.29, 98 S.Ct. 2279, 2296 n.29, 57 L.Ed.2d 117 (1978), the Court noted that, where the words of the statute are plain and unambiguous on the face of the statute, there is "ordinarily" no need to resort to legislative history. *See Ex parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949); *Glenn v. United States*, 571 F.2d 270, 271 (5th Cir. 1978). However, the Court has clearly held that consideration of legislative history is proper in determination of the meaning of words used in statutes, even where the meaning of the words appears to be plain. "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *Train v. Colorado Public Interest Research Group, Inc., supra*, 426 U.S. at 10, 96 S.Ct. at 1942, *quoting United States v. American Trucking Assns., supra*, 310 U.S. at 543–44, 60 S.Ct. at 1063–64.

The Supreme Court has looked beyond the plain meaning of the words used in a statute to the purpose of the act where that meaning produced an unreasonable result "plainly at variance with the policy of the legislation as a whole." *United States v. American Trucking Assns., supra*, 310 U.S. at 543–44, 60 S.Ct. at 1063–64 (footnotes omitted). Where the policy of the act is at such variance with the plain meaning of the words of the statute, the Court has followed the purpose of the statute rather than the literal words. *Id. See Medler v. United States, Bureau of Reclamation*, 616 F.2d 450, 453 (9th Cir. 1980); *Church of Scientology v. United States Department of Justice*, 612 F.2d 417, 422 (9th Cir. 1979); *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir. 1978).

The strict construction principle governing interpretation of criminal statutes "can-

---

**11.** *See Church of Scientology v. United States Department of Justice*, 612 F.2d 417, 420–22 (9th Cir. 1979).

not provide a substitute for common sense, precedent and legislative history." *United States v. Standard Oil Co.*, 384 U.S. 224, 225, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966). The canon that penal statutes should be strictly construed "is not an inexorable command to override common sense and evident statutory purpose." *United States v. Cook, supra*, 384 U.S. at 262, 86 S.Ct. at 1414, *quoting United States v. Brown*, 33 U.S. 18, 25, 68 S.Ct. 376, 379, 92 L.Ed. 442 (1948).

Although as a general rule the use of a disjunctive in a statute indicates that alternatives were intended, *Quindlen v. Prudential Insurance Co. of America*, 482 F.2d 876, 878 (5th Cir. 1973), where a strict grammatical construction of the word "or" would frustrate legislative intent, "or" has been read to mean "and." *De Sylva v. Ballantine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956).[12] The Supreme Court has stated that "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise...." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979).

The recantation provision of Section 1623(d) is an exception to the remaining subsections of Section 1623. The rule of strict construction also applies to exceptions or provisions of a criminal statute which exempt conduct otherwise within a statute and the exception is to be strictly construed against the defendant seeking to invoke its protection. *United States v. Scharton*, 285 U.S. 518, 521–22, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932); *Moore, supra*, 613 F.2d at 1044–45. *See United States v. An Article of Drug ... "Bentex Ulcerine,"* 469 F.2d 875, 878 (5th Cir. 1972), *cert. denied*, 412 U.S. 938, 93 S.Ct. 2772, 37 L.Ed.2d 397 (1973). The defendant must show that he is within an exception. *McKelvey v. United States*, 260 U.S. 353, 356–57, 43 S.Ct. 132, 133–34, 67 L.Ed. 301 (1922); *Green, Moore & Co. v.*

*United States*, 19 F.2d 130, 131 (5th Cir.), *cert. denied*, 275 U.S. 549, 48 S.Ct. 86, 72 L.Ed. 420 (1927).

■ The conjunctive reading of Section 1623(d) comports with accepted principles of statutory construction and is supported by the underlying congressional intent. We have determined that Congress did not intend to allow a perjurer to avoid prosecution by merely recanting before his perjury adversely affected a grand jury proceeding, even after his perjury had already been exposed. Therefore, we hold that recantation bars prosecution only when the defendant has satisfied both conditions of Section 1623(d).

The district court found that the second condition of Section 1623(d)—"it has not become manifest that such falsity has been or will be exposed"—was satisfied by Scrimgeour. The district court seemed to suggest that Scrimgeour had no awareness that his lies had been or would be exposed to the Government because the Government attorneys never revealed to Scrimgeour that they believed that his testimony was false and never informed him that they were considering bringing a perjury indictment against him. The court also reasoned that there was a basic inconsistency in the Government's position that perjury was manifest, and its attempts to prevent Scrimgeour from obtaining his testimony and its lack of communications to Scrimgeour concerning its intention to prosecute him for perjury.

■ On the basis of our review of the record, we conclude that the district court erred to the extent of 180 degrees in its determination that Scrimgeour was not aware when he recanted on November 7, 1977, that the Government realized that he had testified falsely before the grand jury.

Scrimgeour was twice warned during the June 16, 1977, proceeding in which he testi-

---

12. *See, e. g., Travelers Ins. Co. v. Norton*, 24 F.Supp. 243, 246 (S.D.N.Y.1938). Conversely, the word "and" has been read to mean "or." *E. g., Union Central Life Ins. Co. v. Skipper*, 115 F. 69, 72 (8th Cir. 1902); *United States v.* *Cumbee*, 84 F.Supp. 390, 391 (D.Minn.1949); *United States v. Mullendore*, 30 F.Supp. 13, 15 (N.D.Okl.1939), *app. dismissed*, 111 F.2d 898 (10th Cir. 1940).

fied falsely that there were severe penalties for perjury and was given the opportunity to then change his testimony. In July 1977, Scrimgeour's attorney contacted Government counsel and mentioned Scrimgeour's possible perjury. Only a few hours after one witness, Lincks, testified in September, Scrimgeour's attorney called a Government attorney and stated that Scrimgeour knew that Lincks had been a "songbird" before the grand jury. During that conversation, Scrimgeour's attorney stated that it was unfair to immunize culpable individuals "and then indict smaller fish like Bill Scrimgeour...." Additionally, at the hearing on the motion to disclose the grand jury transcript, which was held earlier on the same day that Scrimgeour reappeared before the grand jury, Scrimgeour's counsel acknowledged the possibility of a perjury indictment and the Government attorney stated that Scrimgeour was a target of the grand jury's investigation.

Knowledge that an antitrust indictment was probable demonstrates Scrimgeour's awareness that the Government had evidence that directly contradicted his false testimony. Further, Scrimgeour's attorney's statement to Government counsel about a possible perjury indictment manifests that Scrimgeour's false testimony had been exposed to the Government.

The Government was under no obligation to furnish Scrimgeour with a copy of his transcript. Indeed, a court order is required under Fed.R.Crim. P. 6(e) for disclosure by the Government of a grand jury transcript.[13] Scrimgeour's lack of access to his grand jury transcript until the day of his reappearance is not inconsistent with the purposes of Section 1623(d). The lack of a transcript does not frustrate the purposes of that section. *United States v. Clavey*, 578 F.2d 1219 (7th Cir. 1978) (per curiam) (en banc), *vacating* 565 F.2d 111 (7th Cir. 1977), *cert. denied*, 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978) (affirming, without en banc opinion because of equally divided en banc court, district court opinion which held that a district court's refusal to release to a defendant a transcript of his grand jury testimony did not bar prosecution under Section 1623(d)).

■ The Government is not required to affirmatively act to inform a perjurer that his perjury is manifest.[14] Developments other than direct confrontation by the Government can make exposure manifest. *See United States v. Krogh*, 366 F.Supp. 1255, 1256 (D.D.C.1973). Although the manifest element may have been more explicit in some cases involving this issue, none of those cases mandate affirmative

**13.** Fed.R.Crim. P. 6(e) provides in pertinent part:

> (2) [A]n attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules....
> (3) Exceptions. [Subsections (A) and (B) refer to disclosure to government attorneys and personnel].
> (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
> (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
> If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time,

and under such conditions as the court may direct.

This Court has assumed that a court order is a prerequisite for disclosure of a grand jury transcript by the Government to declarants. *United States v. Fuentes*, 432 F.2d 405, 408 (5th Cir. 1970), *cert. denied*, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 822 (1971). "The decision whether to disclose grand jury testimony is committed to the sound discretion of the trial court." *Id.* The Government relied repeatedly on Fed.R.Crim. P. 6(e) in declining to release the transcript of Scrimgeour's testimony. Scrimgeour's counsel indicated to the Government an awareness that he could file a motion for an order compelling disclosure of the transcript.

**14.** It has been argued that a prosecutor unfairly limits a declarant's ability of recanting by making his perjury manifest as soon as it is given. *United States v. Del Toro*, 513 F.2d 656, 666 (2d Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

Government action to inform the defendant that exposure is manifest.[15]

Because we hold that a defendant must satisfy both conditions of Section 1623(d) in order to be protected from prosecution for perjury, and that Scrimgeour failed to satisfy the second condition, we do not reach the issue whether, at the time Scrimgeour recanted, his false testimony had substantially affected the grand jury proceeding.

Scrimgeour argued to the district court that his indictment should be dismissed on the ground of violation of due process, but the district court found it unnecessary to resolve this issue in light of its conclusion that prosecution was barred by Section 1623(d). The district court stated that it had serious reservations about the fairness of the Government's action in permitting Scrimgeour to recant without warning him that his recantation would be to no avail because the Government intended to prosecute him for perjury whether or not he recanted. The court reasoned that the purpose of Section 1623(d)—including recantation of false testimony—would be frustrated if a witness could expressly invoke that section and yet still be prosecuted. Finally, the court stated that "[i]f the government wants the benefit of recanted testimony pursuant to 1623(d), it must pay the statutory price and forego prosecution."

 There is no constitutional requirement that the Government inform a grand jury witness that he is a potential defendant. *United States v. Washington*, 431 U.S. 181, 186–89, 97 S.Ct. 1814, 1818–20, 52 L.Ed.2d 238 (1977). Nor does due process require that the Government warn a grand jury witness that he is a target of the grand jury's investigation. *United States v. Crocker*, 568 F.2d 1049, 1053–56 (3d Cir. 1977). In *Crocker* the Government misled the defendant by telling him that he was *not* a target of the investigation, yet the perjury indictment was held to be valid despite a due process challenge. *Crocker* relied on two Supreme Court cases, *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977), and *United States v. Washington, supra*, 431 U.S. at 181, 97 S.Ct. at 1814, stating that those cases "rejected the contention that there was a due process obligation to do anything more than inform the witness of the dangers of testifying falsely by administering an oath." 568 F.2d at 1055.[16]

 The Government is not even required by due process principles to inform a grand jury witness of his statutory right to recant. *See United States v. Crocker, supra*, 568 F.2d at 1055–56; *United States v. Anfield*, 539 F.2d 674, 679 (9th Cir. 1976); *United States v. Lardieri*, 497 F.2d 317, 321 (3d Cir. 1974), *on rehearing, remand withdrawn and judgment affirmed*, 506 F.2d 319 (1974); *United States v. Cuevas*, 510 F.2d 848, 851–52 (2d Cir. 1975).

Scrimgeour's attorney acknowledged to Government attorneys at the hearing on the motion to compel disclosure of the grand jury transcript that Scrimgeour could be indicted for perjury "even if we appear and recant...." This statement demonstrates that Scrimgeour was aware that his

---

**15.** *United States v. Swainson*, 548 F.2d 657, 663 (6th Cir.), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977) (witness heard transcript of two contradicting witnesses); *United States v. Del Toro*, 513 F.2d 656, 665–66 (2d Cir. 1975) (defendant was warned that he was a grand jury target and that he might be subject to a perjury prosecution); *United States v. Mazzei*, 400 F.Supp. 17, 19 (W.D.Pa. 1975) (Government advised defendant that it considered answers untrue and would seek perjury indictment); *United States v. Mitchell*, 397 F.Supp. 166, 176–77 (D.D.C.), *aff'd sub nom. United States v. Haldeman*, 559 F.2d 31 (1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (Government informed de-fendant that, based on testimony of witnesses who appeared subsequent to defendant's appearance, defendant was grand jury target); *United States v. Crandall*, 363 F.Supp. 648, 655 (W.D.Pa.1973), *aff'd without opinion*, 493 F.2d 1401, 495 F.2d 1368, 1369 (3d Cir.), *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974) (Government showed defendant draft indictment on underlying offense).

**16.** *Wong* held that a grand jury witness under investigation who was later indicted for perjury was not entitled to be warned of her Fifth Amendment privilege prior to her grand jury testimony.

recantation might be to no avail, *i. e.*, that Section 1623(d) is not an automatic bar to prosecution for perjury.

 We conclude that the Government did not deprive Scrimgeour of due process of law. Because Scrimgeour failed to satisfy the conditions of Section 1623(d) and since he was not denied due process, dismissal of the indictment was erroneous.

REVERSED and REMANDED.