BAKER, Judge*
(concurring in the result):
There are usually two sides to every story, or case. Where Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869 (2012), is concerned, the statutory language is not as unambiguous as portrayed by the majority opinion. As explained below, multiple interpretations are available. However, under any plausible interpretation, the Government has not established jurisdiction. Therefore, I concur in the result.
In Goldsmith, this Court went too far and asserted jurisdiction over what was clearly an administrative matter. Goldsmith v. Clinton, 48 M.J. 84, 87-90 (C.A.A.F.1998) rev’d, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), vacated, 52 M.J. 415 (C.A.A.F.1999). The connection to court-martial jurisdiction was tenuous at best. The Supreme Court concluded as much and reversed. Clinton v. Goldsmith, 526 U.S. 529, 534-36, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). However, in recent years this Court *444 has swung too far in the other direction and neither asserted nor defended its jurisdiction or the jurisdiction of military appeals courts to hear appeals. See Ctr. for Constitutional Rights v. United States, 72 M.J. 126, 130 (C.A.A.F.2013); United States v. Rodriguez, 67 M.J. 110, 116 (C.A.A.F.2009); United States v. Rorie, 58 M.J. 399, 405-07 (C.A.A.F.2003). Where this Court has found jurisdiction it has done so by the narrowest of margins. LRM v. Kastenberg, 72 M.J. 364, 368 (C.A.A.F.2013); Denedo v. United States, 66 M.J. 114, 125 (C.A.A.F.2008), aff'd and remanded, 556 U.S. 904, 913-15, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009). Therefore, if the President and the Congress believe that judicial appellate review is important, if not essential, to a uniform and credible military justice system, or that civilian judicial oversight upholds an important constitutional principle, I would urge the Congress and the President to consider where and how to clarify and express judicial appellate jurisdiction over courts-martial. Likewise, I would urge the President and the Congress to clarify the appellate jurisdiction of the courts of criminal appeals (CCAs) with respect to Article 69, UCMJ, and to do so conscious of how this article has been applied, or more to the point, not applied.
A Article 69, UCMJ, Applied to this Case
In this case, the parties agree on three points. First, the Ml Writs Act, 18 U.S.C. § 1651(a) (2012), applies to the CCAs. Second, the act can only be used in aid of jurisdiction that already exists; it does not create or expand jurisdiction. Third, however useful it might be, the courts of criminal appeals and this Court do not have supervisory authority over courts-martial or military justice, outside the context of hearing appeals.
The United States Air Force Court of Criminal Appeals determined that Appellant was not entitled to Article 66, UCMJ, 10 U.S.C. § 866 (2012), review because his sentence was sub-jurisdictional in nature. He was not sentenced to one year or more of confinement and did not receive a punitive discharge. Nonetheless, the court determined that review of Appellant’s motion for a writ in this case was in aid of its existing jurisdiction, on the basis of three considerations. First, the Judge Advocate General (TJAG) could have referred the case, meaning that the CCA could potentially have reviewed it. Second, in the view of the lower court, Article 69(d)(2), UCMJ, “authorizes this court to review ‘any action taken by the Judge Advocate General under this section’ in a court-martial.” Third, the court drew support from Dew v. United States, 48 M.J. 639, 645 (A.Ct.Crim.App.1998), which found that, “[a]s the highest judicial tribunal” in each service’s court-martial system, the CCAs “are expected to fulfill an appropriate supervisory function over the administration of military justice,” id., which is sufficient basis to resolve extraordinary writs. United States v. Arness, Misc. Dkt. No. 2013-30, 2014 CCA LEXIS 160, at *6, 2014 WL 1309825, at *2-*3 (A.F.Ct.Crim.App. Mar. 11, 2014) (unpublished).
The reasoning is succinct and ultimately not persuasive, especially because the TJAG did not refer the case to the CCA as provided for in subsection (d)(1) of Article 69, UCMJ. Neither did he take action on the case, as referenced (according to some interpretations) in subsection (d)(2). Nevertheless, I differ with the majority opinion’s analysis in reaching this conclusion.
Article 69, UCMJ, states:
(d) A Court of Criminal Appeals may review, under section 866 of this title (Article 66)—
(1) any court-martial case which (A) is subject to action by the Judge Advocate General under this section, and (B) is sent to the Court of Criminal Appeals by order of the Judge Advocate General; and,
(2) any action taken by the Judge Advocate General under this section in such case.
On the one hand, the presumptive view, and that taken by the majority, is that subsections (1) and (2) are to be read together, as they are connected by the conjunctive “and.” Thus, there is a trigger, controlled by TJAG, *445 followed by what might be viewed as a subject-matter limitation. In other words, according to the majority opinion, a CCA may only review an Article 69, UCMJ, case which is subject to action by the TJAG under Article 69, UCMJ, and is also sent to the CCA by the TJAG in accordance with subsection (d)(1). Upon undergoing its review, the CCA may only review “any action taken” by the TJAG “in such case,” per subsection (d)(2). “Such case” is thus a ease reviewed by the TJAG and sent to the CCA This narrow reading is also consistent with the general principle that the jurisdiction of Article I courts should be read narrowly.
On the other hand, the real question presented in this case is whether there is a different view that is both available, and, perhaps, more persuasive. See King v. Burwell, - U.S. -, 135 S.Ct. 2480, 2495, 192 L.Ed.2d 483, 501 (2015) (recognizing that in certain eases, “the context and structure of [an] Act compel [courts] to depart from what would otherwise be the most natural reading of the pertinent statutory phrase”). Here, the statutory language supports an alternate reading to that propounded by the majority: namely, that subsection (d)(2) of Article 69, UCMJ, is a second grant of jurisdictional authority, rather than a third requirement contained in a single grant of authority.
Under this view, contrary to the majority opinion’s assumption, the' inclusion of “and” between subsections (1) and (2) is not used as a conjunctive. It is used to present a list of two. See 135 S.Ct. at 2489, 192 L.Ed.2d at 494 (“[0]ftentimes the ‘meaning — or ambiguity — of certain words or phrases may only become evident when placed in context.’” (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000))).
Indeed, as several federal circuit courts have recognized, at times the conjunctive “and” and the disjunctive “or” are interchangeable, particularly where “a strict grammatical construction will frustrate legislative intent.” United States v. Moore, 613 F.2d 1029, 1040 (D.C.Cir.1979); see also McCormick v. Dep’t of Air Force, 329 F.3d 1354, 1355 (Fed.Cir.2003) (“Our sister eir-euits have likewise read ‘or’ to mean ‘and’ or ‘and’ to mean ‘or’ in order to effectuate Congress’s intent.” (citations omitted)); United States v. Gomez-Hernandez, 300 F.3d 974, 978 (8th Cir.2002) (“Although the word ‘and’ is usually a conjunctive, to ascertain the clear intention of the legislature ... courts are often compelled to construe ‘or’ as meaning ‘and,’ and again ‘and’ as meaning ‘or.’ ” (citation omitted) (internal quotations marks omitted)); United States v. Sherman, 150 F.3d 306, 317 (3d Cir.1998) (adopting Moore’s proposition that the word “or” in statute at issue is more appropriately read as “and”); United States v. Smeathers, 884 F.2d 363, 364 (8th Cir.1989) (citing Moore in support of the proposition that “[normally the word ‘or’ connotes disjunction.... This rule of construction yields, however, when a disjunctive reading would frustrate a clear statement of legislative intent.” (citations omitted)); Bruce v. First Fed. Sav. & Loan Ass’n of Conroe, Inc., 837 F.2d 712, 713 (5th Cir.1988) (holding that the word “and” in the antitying provision of 12 U.S.C. § 1464(q)(l) should properly be read as “or”); United States v. Scrimgeour, 636 F.2d 1019, 1022-24 (5th Cir.1981) (adopting Moore to conclude that the use of “or” means “and” in statute at issue).
This Court has also recognized that, at times, “and” must be read to mean “or” and “or” to mean “and” so as to give effect to legislative intent. See United States v. Tee, 20 C.M.A. 406, 407, 43 C.M.R. 246, 247 (1971) (collecting cases) (“Where legislative intent compels such a result, the normal meanings of ‘and’ and ‘or’ may be reversed.”); United States v. Chilcote, 20 C.M.A. 283, 286, 43 C.M.R. 123, 126 (1971) (“The disjunctive ‘or’ and the conjunctive ‘and,’ ... are not to be considered as interchangeable unless reasonably necessary in order to give effect to the intention of the enacting body.” (citing Earle v. Zoning Bd. of Review of Warwick, 96 R.I. 321, 191 A.2d 161, 163 (1963)), superseded by statute on other grounds, Pub.L. No. 98-209, § 7(b), 97 Stat. 1402 (1983)); see also United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F.2008) (finding that the “substantial-basis in law and fact” test for the providence of a plea which “is presented in the eonjunc- *446 tive (i.e., law and fact) ... is better considered in the disjunctive (i.e., law or fact)”).
In this reading, section (d) of Article 69, UCMJ, presents the chapeau — “[a] CCA may-review” — and subsections (1) and (2) present the two distinct circumstances in which a CCA would have jurisdiction under Article 69, UCMJ. First, the CCA may review any ease subject to action by the TJAG that the TJAG refers to the CCA, per subsection (d)(1). Under such circumstances, although a ease is “subject to action by the TJAG,” the TJAG may decide not to review the ease and send it on to the CCA instead. Second, the CCA may review any case where the TJAG has taken “any action” under this section. This is a CCA review of what the TJAG has actually done, to ensure that it comports with the law. Under this reading, the CCA would not have jurisdiction in those cases where: (a) the accused waives or withdraws his right to appellate review, or (b) the TJAG reviews the ease and takes no action, i.e., affirms the case “as is.”
This alternate reading of the statute interpreting “and” to be disjunctive is supported by several canons of statutory interpretation, including the so-called “plain language” canon, which, in this case, proves not so plain. First, the heading seems to suggest a list of two. Second, “subject to action” is prefatory language. The TJAG could take action. This language is thus distinct from subsection (d)(2) where the TJAG has in fact taken “any action.” Subsection (d)(1)(A), requiring that a court-martial case be “subject to action” by the TJAG, would then become redundant language if “[a]ny action taken by the” TJAG under subsection (d)(2) was an additional requirement, rather than a separate predicate for jurisdiction. Presumably, if the TJAG has taken “[a]ny action” in a case, that case was “subject to action by the” TJAG. Reading the “and” in the disjunctive, therefore, would not only comport with the plain language of the statute, but also avoid the rule against surplusage. See Ratzlaf v. United States, 510 U.S. 135, 140-41, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).
Third, reading “and” in the disjunctive is also arguably consistent with the overall purpose of the UCMJ and appellate schemes, because it provides for appellate judicial review within a unitary military justice system rather than moving such review to boards of review or habeas review in Article III courts. It is hard to imagine that Congress intended to create a system where the government could abuse a right or skirt the law and then avoid judicial review by having the convening authority ensure the punishment was sub-jurisdictional, preventing the CCA from rectifying the error. Congress, we know, did not intend to limit CCA review only to Article 66, UCMJ, qualifying-sentence cases, because the CCA can and does exercise review on an interlocutory basis where the sentence is not yet known. See Kastenberg, 72 M.J. at 368 (“A writ petition may be ‘in aid of a court’s jurisdiction even on interlocutory matters 'where no finding or sentence has been entered in the court-martial.”).
Despite the merits of this alternative interpretation, I nonetheless believe that the presumptive view that CCA review is not triggered unless and until the TJAG refers an Article 69, UCMJ, case to the CCA is — at this stage in UCMJ practice — the better view. There is plain language support for this reading in the final clause of subsection (d)(2) of Article 69, UCMJ, “in such case.” If this clause did not refer back to subsection (d)(1), it is not clear to what it refers, and this language would therefore become superfluous. Moreover, Article 69, UCMJ, has not previously been interpreted as providing two separate grants of jurisdiction, but rather as a singular grant with three threshold requirements. If TJAGs’ actions were subject to CCA review without referral to the CCA by the TJAG, then we would expect to have seen multiple cases involving such exercise of jurisdiction. You would also expect a track record of CCA review of courts-martial not otherwise subject to review under Article 66, UCMJ. The President and executive branch have interpreted Article 69, UCMJ, this way as well. This is reflected by the discussion in Rule for Court-Martial (R.C.M.) 1201(b)(3), which states: “Review of a ease by a Judge Advocate General under this subsection is not part of appellate review within the meaning of Article 76 or R.C.M. 1201.”
*447 Further, this view comports with legislative history. The original version of Article 69, UCMJ, passed by the House of Representatives, did not authorize certification of issues by the TJAG to the CCA at all, providing no opportunity for appellate review of sub-jurisdictional cases. See United States v. Monett, 16 C.M.A. 179, 181, 36 C.M.R. 335, 336-37 (1966). The Senate added the certification provision to give the TJAG authority to certify a case for CCA review, suggesting that appellate review without referral by the TJAG was never available for sub-jurisdictional cases. Id Finally, where Article I courts are concerned, the tie goes to the narrow view of jurisdiction.
In any event, even if we were to accept Appellant’s alternative reading of the statute, the CCA would not have jurisdiction over this ease. The TJAG did not refer the case to the CCA and the TJAG did not take any action in the case. Therefore, I concur in the result.
B. Article 69, UCMJ, Does not Serve the Purposes for Which it Was Intended
Article 69, UCMJ, was enacted in 1956 with the purpose of preserving “the right to present minor cases for review by” the CCA in order to “achiev[e] certainty in, and uniformity of, interpretation of the Uniform Code in each armed force, as well as for all the armed forces.” See Monett, 16 C.M.A. at 181, 36 C.M.R. at 337.
Whatever was intended with Article 69, UCMJ, the fact is TJAGs do not as a matter of practice refer eases to the CCA or to this Court pursuant to Article 69, UCMJ, review. That means that a majority of cases arising under the UCMJ are sub-jurisdictional. That also means that a majority of courts-martial are not subject to appellate judicial review or civilian judicial review.
TJAGs are not independent or impartial judicial entities. TJAGs represent the government and, while in theory they are to exercise independent judgment when it comes to Article 69, UCMJ, review — and I do not doubt the sincerity with which they do so — the fact is, they are closely aligned with the government. TJAG review, as a matter of appearance, is neither independent of government interest nor impartial.
A restrictive reading of Article 69, UCMJ, also means that if the government wishes to avoid appellate judicial review, it need only ensure that an accused receives a sub-jurisdictional sentence. This can be done through the use of plea bargains and plea agreements. The accused’s usual interest, of course, beyond acquittal, is to minimize sentence exposure, not to ensure appropriate appellate review of legal questions, or to otherwise ensure that the government upholds the spirit and letter of the Fourth, Fifth, and Sixth Amendments.
Nor are legal questions, due process issues, and questions of legal sufficiency limited to cases involving sentences greater than one year’s confinement or a punitive discharge. Although it is safe to assume more complex cases with greater .punitive exposure are more likely to raise legal questions warranting appellate review and decision, this does not mean sub-jurisdictional cases. are devoid of legal questions warranting judicial review. This means that the standard of justice as between services in sub-jurisdictional eases may not, in fact, be uniform between the services.
The .consequence is that a majority of cases are not subject to appellate review by the CCAs. This cannot be what Congress intended when it created a military justice system subject to appellate review. This also means a majority of appellate cases are not subject to civilian oversight. This cannot be what Congress intended when it created a system of military justice subject to civilian judicial oversight. But Article 69, UCMJ, is not clear, and'this is the result..
Therefore, I would invite the President and the Congress to consider Article 69, UCMJ, anew and in clear and plain language determine where and when courts-martial should be subject to direct judicial review. Without such clarity, the government will argue for and apply the narrowest possible jurisdiction, a view with which this Court has shown a recent propensity to agree.

 Former Chief Judge James E. Baker took final action in this case prior to the expiration of his term on July 31, 2015.