**UNITED STATES of America,
Appellee,**

v.

**Adrian CUEVAS, Appellant.**

**No. 577, Docket 74–2110.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1975.

Decided Feb. 10, 1975.

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for appellant.

Richard W. Brewster, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E.D.N.Y., Paul B. Bergman, Asst. U. S. Atty., of counsel), for appellee.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment of the United States District Court for the Eastern District of New York, John R. Bartels, Judge, after a jury trial, convicting appellant on three counts of false declarations before a grand jury (18 U.S.C. § 1623).[1] Appellant claims that excessive participation by the trial judge deprived him of a fair trial; that the prosecutor must advise a grand jury witness of his right to recant under 18 U.S.C. § 1623(d); and that the Government improperly brought the appellant before a grand jury in the Eastern District solely for the purpose of attempting to have him commit perjury. We affirm the judgment.

The gist of appellant's complaint about the conduct of the trial judge was that by excessive participation in the conduct of the trial amounting to "wholesale involvement" in the Government's case the trial judge communicated to the jury his belief in the appellant's guilt. The principal examples of intervention referred to include the judge's asking approximately 35 questions, while the Assistant United States Attorney asked only about 20 questions, on direct examination of the Government's witness (Martinez) who participated in the sale of cocaine by appellant which led to the latter's interrogation before the grand jury; the judge's resolving two ambiguous

---

1. Sentence on each count was a term of three years, with two years and six months suspended, all to run concurrently.

answers[2] in Cuevas' grand jury testimony by interpreting them before the petit jury; and the judge's rehabilitating the same Government witness in reference to his own grand jury testimony in which he had referred to the drugs as "Exhibit One" although there was no such exhibit before the grand jury. We have carefully examined the record and find the appellant's complaints to be without merit.

 It is true that the trial judge did participate in connection with a number of witnesses to a greater than usual extent. This occurred perhaps because there were two Assistant United States Attorneys trying this relatively simple case, from which we infer (and indeed were informed at argument) that one was inexperienced. To be sure, appellant correctly asserts that it is not the business of a trial judge who thinks the Assistant United States Attorney inadequate to step in to the point where the jury will regard him as associated with the prosecution. United States v. Fernandez, 480 F.2d 726, 737 (2d Cir. 1973).

2. Q. Is it your testimony that you have never given anybody even a small amount of cocaine? A. No.

Q. Is it your testimony that you never gave anybody on the evening of March 22, 1972, a small amount of cocaine wrapped in a dollar bill? A. No.

Judge Bartels brought out that what appellant was saying was "that he never gave anybody a small amount of cocaine." When the judge asked counsel for appellant whether he agreed with this interpretation, counsel concurred.

3. While Judge Bartels' questions did not imply a belief in guilt and elicited for the most part minor background information (such as whether a time reference to "10:35" was a.m. or p.m. or how many ounces are in an eighth of cocaine), we recognize that a judge's intervention in a trial, even to elucidate events, should be the exception, not the rule. United States v. D'Anna, 450 F.2d 1201, 1206 (2d Cir. 1971). In this regard the judge went, in the words of "Oklahoma!" just about as far as he could go. E. g., when defense counsel objected to Martinez' qualifications to explain what was meant by "cutting" cocaine the judge himself laid the foundation as follows:

Defense Counsel: Objection. Is Officer Martinez an expert on drugs?

Nevertheless the federal district judge is more than a moderator or an umpire and has an active duty to see that any trial, including a criminal one, is fairly conducted, United States v. Curcio, 279 F.2d 681, 682 (2d Cir.), cert. denied, 364 U.S. 824, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960), and the issues clearly presented, United States v. Brandt, 196 F.2d 653, 655 (2d Cir. 1952). He must not, of course, interrogate defense witnesses in such a way as to reflect his disbelief, United States v. Fernandez, supra, or seek to underline inconsistencies in their positions or to elicit admissions bearing on their credibility, United States v. Brandt, supra, much less make it appear through the examination of witnesses and the harassment of defense counsel that the court believes the accused is guilty. United States v. Nazzaro, 472 F.2d 302 (2d Cir. 1973). Our examination of the record indicates that Judge Bartels did not cross these forbidden lines; rather, we view his interrogation as basically for purposes of clarification and assistance to the jury in understanding the evidence.[3]

The Court: I suppose he has had some experience. I will find out. Mr. Martinez, this was August, 1972?

The Witness: February.

The Court: You were then assigned to the Drug Task Force in August?

The Witness: Correct.

The Court: Had you had any experience in dealing with sellers of drugs from August till February?

The Witness: Yes I did.

The Court: Before that did you have any experience?

The Witness: No, I did not.

The Court: What did that experience consist of—buying drugs on behalf of the city as an undercover agent? Not selling, just buying?

The Witness: Correct.

The Court: Approximately how many transactions did you engage in between August, 1971, to February, 1972, if you can estimate?

The Witness: I would say approximately just an estimate, about ten.

The Court: About ten and in the course of that were you able to tell just to what extent cocaine could be cut?

The Witness: Well, yes.

The Court: Do you understand the language as used by the sellers of cocaine

The two ambiguous questions from the grand jury testimony the answers to which the judge sought to clarify, note 2, *supra,* were not central to the charge in Count 3, the only count in which they appeared. *See generally* Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). Rather, they were the conclusion of extensive questioning in which appellant had specifically and repeatedly denied selling cocaine at his LaColina bar and restaurant or giving undercover narcotics officer Martinez a sample of cocaine (in a folded dollar bill) on a specific date. Appellant's trial counsel's prompt concurrence in Judge Bartels' resolution of the ambiguous questions took them out of the case substantively. Nor do we think that this resolution is indicative of the judge's belief in guilt; rather, in this instance, it evidenced the judge's attention to a detail which might have posed a problem but for the unambiguous testimony preceding it and to which the questions referred. *See* United States v. Boatner, 478 F.2d 737, 740 (2d Cir.), cert. denied, 414 U.S. 848, 94 S.Ct. 136, 38 L.Ed.2d 96 (1973); United States v. Pellegrino, 470 F.2d 1205, 1207 (2d Cir.), cert. denied, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973).

So, too, officer Martinez' testimony about "Exhibit One" tended to be confusing. We think the judge was justified, in the quest of truth through clarity, to inquire whether Martinez' reference before the grand jury to "this Exhibit One which is a folded United States dollar bill with some white powder in it" was to a designation in the police case file rather than to a grand jury exhibit. The whole matter became doubly confused when it subsequently appeared on the cross-examination of another Government witness, detective Vallely, that he had referred to an attempt to purchase "Exhibit One" on February 24 when the testimony established that there was no "Exhibit One" until March 22. The judge stepped in, properly we think, to clarify that this officer, a narcotics detective, spoke of "Exhibit One" as being a quantity of narcotics, *i. e.,* that it is essential to make a purchase to establish a case. In the light of the cross-examination of Martinez about "Exhibit One," the testimony of Vallely would have been confusing without the explanation elicited from the latter by Judge Bartels. That explanation seems to us not only plausible, but the only one which makes sense.[4] These are only examples of intervention, but they are appellant's strongest and, as we have said, we believe them insufficient to warrant reversal.

Appellant's second point is that the Government did not advise him during his grand jury appearance that he could avoid a perjury indictment by recanting. The argument is based upon a statement in one case, United States v. Lardieri, 497 F.2d 317, 321 (3d Cir. 1974), that "in some circumstances" a prosecutor may be required to advise a grand jury witness of the recantation clause in 18 U.S.C. § 1623(d).[5] That decision, however, was vacated in an opinion of the Third Circuit filed December 18, 1974, on reargument (D.C.Crim. No. 72–192), 506 F.2d 319 where the court specifically held at p. 323, that "dismissing perjury indictments where the prosecutor has not given such notice would create a new impediment to successful perjury prosecutions," and that neither the requirements of due process nor the proper exercise of supervisory powers by the court compel the prosecutor to inform the wit-

---

when they say "to be cut one eighth or one half" or that sort of thing?
The Witness: Yes.
The Court: How did you learn what it meant?
The Witness: From the other officers in the office when you first start. We had discussions with the lab. They come down and give us courses on it.
The Court: What was the question?

**4.** As we read the record, the judge was himself confused initially by Vallely's reference to "Exhibit One," still thinking that "Exhibit One" was the dollar bill referred to by Martinez. Vallely finally explained clearly that it was the white powder in the dollar bill, *i. e.,* the cocaine to which both were referring, in narcotics detection jargon, as "Exhibit One."

**5.** 18 U.S.C. § 1623(d) provides that:
Where, in the same continuous court or grand jury proceeding in which a declara-

ness of the right to recant under 18 U.S.C. § 1623. We agree with the reasoning of *Lardieri II*, at least in situations, as both in *Lardieri* and here, where witnesses have been cautioned relative to perjury. To hold otherwise and impose a duty on the prosecutor to give a recantation warning in effect shields the witness from a perjury prosecution until, if ever, such a warning is given. At that point the witness has notice that perjury is suspected and can choose to recant. In addition, 18 U.S.C. § 1623(d) applies to trials as well as grand jury proceedings, and a recantation warning requirement could operate quite prejudicially in a trial setting.

Finally, appellant argues that he was brought before the grand jury in the Eastern District when in fact the alleged sale took place in the Southern District. He suggests that the venue of the grand jury proceeding reflects improper motivation by the Government. Indeed, relying on Brown v. United States, 245 F.2d 549 (8th Cir. 1957), defense trial counsel moved for a judgment of acquittal. Appellant points out that the crime involved the transfer of 4/100 of a gram of cocaine, but this was only a sample, the Government undercover agent testified, which was to lead toward a sale of a ⅛ kilo of "flaked"[6] cocaine for $1,800 and a ⅛ kilo of "rock" cocaine for $2,000. Appellant also points out and the

Government does not dispute, however, that the file of the case had apparently been closed seven months prior to the grand jury appearance and the drugs destroyed.

■ But the fact is that the Eastern District of New York may well be the biggest single port of entry by air or sea of heroin and cocaine in the United States. We can almost take judicial notice of this from the vast quantity of appeals we have had in this circuit arising from Eastern District importation. By calling appellant before the grand jury, had he revealed the source of his supply, much valuable information might have been obtained. Masinia v. United States, 296 F.2d 871, 876–877 (8th Cir. 1961).[7] This is not a case like Brown v. United States, *supra*, since here information could lead to prosecution of offenses in the Eastern District. In *Brown* information elicited referred only to offenses in Missouri, not Nebraska, the site of the grand jury. Nor is it like United States v. Icardi, 140 F.Supp. 383 (D.D.C.1956), where the testimony was immaterial to the inquiry. United States v. Mandujano, 496 F.2d 1050 (5th Cir. 1974), also relied on by appellant, is also inapposite. *Mandujano*, which involved lack of *Miranda* warnings to a putative defendant before a grand jury, held that since the defendant did not have immunity, without explanation of the right to keep si-

tion is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

6. This is not to be confused with the process of "flaking" which, United States v. Papadakis, 510 F.2d 287 (2d Cir. 1975), tells us, is one in which a narcotics officer or detective plants drugs on a suspect for purposes of obtaining his arrest.

7. In addition, the Drug Abuse Prevention and Control Act, 21 U.S.C. § 801, contains as a finding the multijurisdictional aspect of drug trade. Section 801(3)(B) provides:

The Congress makes the following findings and declarations:

. . . . .

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because—

. . . . .

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution . . ..

Thus, narrow venue restrictions on grand juries investigating drug offenses would run counter to the purpose of the Act.

lent, he would either tell the truth and implicate himself or lie and open himself to a perjury indictment, thereby violating fundamental fairness. 496 F.2d at 1056–58. The proper investigation of narcotics trafficking requires that, absent a greater showing of bad faith than indicated here, a prosecutor in the Eastern District be free to interrogate even small-time dealers in the Southern District, at least with a grant of immunity.

Judgment affirmed.