COMMONWEALTH *vs.* ISIDORE MINKIN & others. June 11, 1982. After a jury trial in the Superior Court, the defendants Isidore Minkin, his wife Gladys, and their son Michael, were convicted on twenty-seven indictments variously charging them with perjury by written instrument (G. L. c. 268, § 1A), larceny by false pretense (G. L. c. 266, § 30[1]), attempted larceny by false pretense (see G. L. c. 274, § 6), and making false statements to the Department of Public Welfare (Department) or its agents (G. L. c. 18, § 5B). The defendants owned or managed a number of nursing homes which provided services to the Department's Medicaid program and which were reimbursed based on financial information submitted in annual reports to the Rate Setting Commission (Commission). The

indictments charged, inter alia, that between 1973 and 1978, each of the defendants signed one or more reports containing false information for the purpose of receiving inflated reimbursements. See generally *Commonwealth* v. *Cerveny*, 373 Mass. 345, 348-350 (1977); *Commonwealth* v. *Gurney*, 13 Mass. App. Ct. 391, 392-393 (1982).

1. Prior to trial, the defendants moved to dismiss the indictments with prejudice on the grounds of "prosecutorial misconduct and vindictiveness," asserting that the "cumulative effects of such misconduct . . . have irreparably prejudiced the defense." The motion judge held a lengthy evidentiary hearing, made findings of fact and rulings of law, and denied the motion. We have examined the record and the judge's decision under the standards applicable in cases which potentially involve constitutional questions, namely, that it was the judge's function to resolve issues of credibility; that his subsidiary findings of fact are to be accepted if supported by the evidence; and that his findings of ultimate fact are open to reexamination by this court, as are his conclusions of law, but they are nonetheless entitled to deference. *Commonwealth* v. *Angivoni*, 383 Mass. 30, 33 (1981), and cases cited. (a) The facts found by the judge with respect to the grounds set out in parts IB, C, D and F, and IIB and C of the motion are supported by the evidence. These findings fully warrant the judge's rejection of those grounds as a basis for the relief sought. (b) We agree with the judge's conclusions with respect to the grounds set out in parts IA and IIIA, B, and C of the motion, as well as his ultimate disposition thereof. (c) The conduct of the assistant attorney general before the grand jury described in part IE of the motion may have amounted to overzealous advocacy at times, but it did not constitute prosecutorial misconduct which required dismissal of the indictments. We are not persuaded that the judge misconstrued *United States* v. *Cuevas*, 510 F.2d 848, 851-852 (2d Cir. 1975), which provides general support for his conclusion on the most disputed feature of the challenged conduct. In this sort of case a measure of forceful questioning is to be expected and tolerated. See, e.g., *Commonwealth* v. *Monahan*, 349 Mass. 139, 160 (1965); *Commonwealth* v. *Gurney*, *supra* at 399 n.9. (d) The defendants' arguments with respect to the grounds set out in parts IID and E of the motion overlook the judge's exclusive prerogative to settle the evidence. These contentions are dispatched by his findings that there was "no credible evidence" to support them. (e) We disagree with the judge's conclusion on part IIA of the motion that the examination of the witness Gurney before the grand jury was a proper "technique . . . to extract evidence from a witness." Nevertheless, in view of the grand jury's collective ability to recall the witness Boynton's testimony, the sufficiency of the evidence to support the indictments against her and the defendants, and the isolated nature of the exchange, we think there was no reasonable likelihood that this incident could have affected the judgment of the grand jury. See *Commonwealth* v. *Edgerly*, 13 Mass. App. Ct. 562, 580 (1982).

(f) As to part IIID of the motion, some of the comments made by the assistant attorney general to newspapers were intemperate and perhaps improper, see S.J.C. Rule 3:22 (now redesignated Rule 3.07), DR 7-107(A), (D), 359 Mass. 822-824 (1971). However, the motion judge properly refused to dismiss the indictments on this ground and properly left the final determination of the effect of the publicity to the trial judge, who was in the best position to deal with any possible prejudice. See *Commonwealth* v. *Nassar,* 351 Mass. 37, 40-41 (1966). Since the trial judge made meticulous efforts to ensure that none of the jurors had heard of these remarks, and since a significant length of time had elapsed between the publication of the comments and the commencement of trial, we are satisfied that there was no reasonable likelihood that the verdicts were affected by these comments. (g) From the judge's statement that the de- · fendants "failed to establish the facts with respect to all the branches of their motion [    ], singly or in the aggregate," and his memorandum, read in light of the arguments and submissions of counsel, there can be no doubt that he considered everything argued by the defendants, including their contention that the cumulative effect of the prosecutor's conduct required dismissal. After reviewing the entire record pertaining to the motion, we conclude that any arguable improprieties, see (e) and (f) above, bear no resemblance to those presented in *Commonwealth* v. *Manning,* 373 Mass. 438 (1977), which ordered indictments dismissed as a sanction against serious official misconduct. We also find nothing to support conclusions that the assistant attorney general "play[ed] an ignoble part" in handling the grand jury's inquiry, *Commonwealth* v. *Lincoln,* 368 Mass. 281, 285 (1975), or that "the integrity of [the] grand jury proceedings . . . [was] impaired" by his conduct, *Commonwealth* v. *Gibson,* 368 Mass. 518, 525 (1975). See *Commonwealth* v. *Favulli,* 352 Mass. 95, 104-107 (1967); *Commonwealth* v. *Dilone,* 385 Mass. 281, 284 (1982); *United States* v. *Cederquist,* 641 F.2d 1347, 1352-1353 (9th Cir. 1981). Contrast *Attorney Gen.* v. *Pelletier,* 240 Mass. 264, 307-310 (1922).

2. We turn to the defendants' six claims of error with respect to the trial. (a) The jury were warranted in finding that the defendants had engaged in an elaborate and carefully designed scheme to defraud the Commonwealth of Medicaid funds, based on evidence which showed (i) the nature of the items included as nursing home expenses in the cost reports submitted to the Commission (e.g., $26,000 worth of renovations to the Minkins' summer home charged as construction costs of their nursing home in Westborough; Gladys Minkin's use of two kitchen employees from their nursing home in Quincy as maids or babysitters in the households of the defendant Michael Minkin and his brother while the employees remained on the home's payroll); (ii) the planning inherent in the manner by which the expenses were charged to the nursing homes (e.g., inaccurate time cards, false payroll checks and false invoices); (iii) the defendants' failure to instruct their accountant to segregate their personal

expenses from those charged to the nursing homes in the cost reports; (iv) the signature of at least one defendant on each report filed with the Commission, all of which contained false information, cf. *Porter* v. *Spring,* 250 Mass. 83, 86 (1924); *Markell* v. *Sidney B. Pfeifer Foundation, Inc.,* 9 Mass. App. Ct. 412, 440 (1980); and (v) the defendants' experience in the management of nursing homes, and their familiarity with the procedures for obtaining reimbursement from the Department, see *Commonwealth* v. *Giles,* 350 Mass. 102, 112 (1966). Viewing the Commonwealth's evidence as a whole, see *Commonwealth* v. *Kelley,* 359 Mass. 77, 86 (1971), together with the inferences which could properly have been drawn therefrom, a rational jury could properly have found beyond a reasonable doubt that each defendant harbored the scienter element necessary for conviction on the several indictments. *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 239 (1982), and cases cited. Accordingly, the defendants' motions for required findings of not guilty on that element of the crimes were properly denied. (b) The defendants' arguments with respect to the indictments framed under G. L. c. 18, § 5B, as appearing in St. 1973, c. 475, overlook the fact that the statute proscribes the submission of false reports to the "department of public welfare *or its agents"* (emphasis supplied) and the fact that it is the Commission which calculates for the Department the rate at which Medicaid providers are to be paid. See *Commonwealth* v. *Cerveny, supra; Commonwealth* v. *Gurney, supra.* See also G. L. c. 6A, § 32; 42 U.S.C. § 1396a(a)(5) (1976); 42 C.F.R. § 431.10(e)(1) - (3) (1976). The fact that the investigation might have provided grounds for indictments under G. L. c. 6A, § 35, does not preclude the application of G. L. c. 18, § 5B, on these facts, or undermine the sufficiency of the evidence under that statute. The judge committed no error in submitting these charges to the jury or in his instructions on the elements of the offense. (c) The record is devoid of concrete proof that the prosecutor proceeded to trial against Michael Minkin with knowledge that he had no evidence to support indictment no. 026094. The statements of the prosecutor relied upon by the defendants (particularly the statement which appears in the transcript at page 100 of volume 8) fall far short of establishing that contention. In concluding that the prosecutor was unaware of the problems of proof until the trial was well underway, the judge was entitled to place substantial reliance on the prosecutor's representation which appears at transcript page 108 of volume 8. The judge ultimately allowed a motion for a required finding of not guilty on this indictment and instructed the jury that it had been withdrawn from their consideration and that they were not to draw any inference from that fact. He was not required to do anything further in the circumstances. (d) In closing argument, the prosecutor was entitled to marshal the evidence and suggest inferences that the jury could draw from it, *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 315 (1973); *Com-*

*monwealth* v. *Fitzgerald,* 376 Mass. 402, 422-423 (1978); *Commonwealth* v. *Ferreira,* 381 Mass. 306, 316 (1980). He may "fit all the pieces of evidence together so that they form a comprehensive and comprehensible picture for the jury." *Commonwealth* v. *Haas,* 373 Mass. 545, 557 n.11 (1977), quoting from Bowler, Oral Argument in Criminal Prosecution, 52 J. Crim. L. 203 (1961). The challenged portion of the argument falls within these principles. We are satisfied that it did not infringe on any right of Gladys Minkin which had not already been exposed to fair comment by her testimony. The judge did not err in refusing the defendants' request for an instruction. (e) The judge's decision to use a verdict chart to assist the jury in their deliberations was within his discretion. See *McDaniel* v. *United States,* 343 F.2d 785, 789 (5th Cir.), cert. denied, 382 U.S. 826 (1965). The chart was a fair summary of the charges against each defendant and an obvious aid to analysis of the issues in this complex trial. See *United States* v. *Bozza,* 365 F.2d 206, 225 (2d Cir. 1966); *United States* v. *Gallishaw,* 428 F.2d 760, 764-766 (2d Cir. 1970); *United States* v. *Borman,* 437 F.2d 44, 45-46 (2d Cir.), cert. denied, 402 U.S. 913 (1971). The judge's charge (covering sixty-seven transcript pages) explained the essential elements of each crime, the rights of the parties, and the jury's function, with care and precision. See *United States* v. *Swan,* 396 F.2d 883, 886 (2d Cir.), cert. denied, 393 U.S. 923 (1968). No abuse of discretion has been shown regarding the use of the chart. (f) At the time of trial and sentencing, it was the law that multiple punishment could not be imposed for the crimes of perjury and attempted larceny by false pretense, *Commonwealth* v. *Cerveny, supra* at 354-356, and that the problem of multiple punishment could not be obviated by concurrent sentencing, *Commonwealth* v. *Jones,* 382 Mass. 387, 395-396 (1981). It was therefore error to impose sentences on Isidore and Gladys Minkin for both of these offenses, which were based on the same conduct, even though the sentences were to run concurrently. Although the *Cerveny* case has been overruled in relevant part by *Commonwealth* v. *Crocker,* 384 Mass. 353, 361 (1981), that case was not decided until after the disposition here. In view of the *Crocker* decision, however, we decline to extend the holding in the *Cerveny* case, or *Commonwealth* v. *Catania,* 377 Mass. 186, 191 (1979), beyond the offenses at issue therein.

The case is remanded to the Superior Court. The judgments of conviction for attempted larceny on indictments nos. 026083, 026084 and 026096 are vacated, and the indictments are to be dismissed. All of the remaining judgments are affirmed.

*So ordered.*

*James J. Sullivan, Jr.,* for the defendants.

*Terrence M. Troyer,* Assistant Attorney General (*Thomas J. Keaney,* Assistant Attorney General, with him) for the Commonwealth.