COMMONWEALTH *vs.* BRIAN QUALTER. February 6, 1985. *Practice, Criminal,* Grand jury proceeding. *Bribery.*

After a jury-waived trial, the defendant was found guilty of eleven counts of an indictment charging bribery under G. L. c. 268A, § 3(*b*).[1] Each count concerned a separate occasion on which an applicant for public housing in Lawrence allegedly made payment to one of three "intermediaries" and was subsequently assigned an apartment by the defendant, the tenant selector for the Lawrence Housing Authority (LHA).[2] The defendant was given concurrent sentences on each count of eighteen months in a house of correction; fifteen months of each sentence were suspended. The trial judge granted the defendant's motion for stay of execution of the sentences. On appeal, the defendant challenges the conduct of the grand jury proceedings and the sufficiency of the evidence at trial.

1. *Grand jury proceedings.* The defendant assigns as error the denial of his motion to dismiss the indictments. Specifically, the defendant claims that the prosecutor improperly influenced the grand jury to terminate prematurely their examination of the defendant, who had requested permission to

---

[1] General Laws c. 268A, § 3(*b*), inserted by St. 1962, c. 779, § 1, provides, in pertinent part, that "[w]hoever, being a . . . municipal employee . . . otherwise than as provided by law for the proper discharge of official duty, directly or indirectly, asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of substantial value for himself for or because of any official act or act within his official responsibility performed or to be performed by him . . . shall be punished. . . ."

[2] The trial judge acquitted the defendant of eleven counts of an indictment for corrupt bribery under G. L. c. 268A, § 2(*b*), and dismissed an indictment under G. L. c. 268A, § 17, for conflict of interest. During trial the Commonwealth entered a nolle prosequi on counts ten and thirteen of each of the three indictments. See Mass.R.Crim.P. 16, 378 Mass. 885 (1979).

testify. During the grand jurors' questioning of the defendant, a recess was called. For at least part of the recess, which lasted from about 2:30 P.M. to 3:20 P.M., the prosecutor was in the grand jury room without a stenographer. The defendant was not allowed to reenter the room after the recess. Immediately after the recess, the grand jurors voted sixteen to four to close the investigation and vote on the indictments.[3] The defendant argues that it is inferable that the prosecutor, during the recess, improperly influenced the grand jurors to end the questioning of the defendant while several of them still had questions to ask.

The motion judge concluded that there had been no improper interference with the grand jury and correctly denied the motion to dismiss the indictments. Dismissal of indictments is warranted when "the integrity of the grand jury proceedings has been impaired." *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 655 (1979). *Commonwealth* v. *Gibson,* 368 Mass. 518, 525 (1975). "Nothing in this record suggests that this grand jury were overawed or moved to act other than as the members deemed right. It appears that the grand jury understood and exercised its independence and its prerogative." *Commonwealth* v. *Favulli,* 352 Mass. 95, 107 (1967). The record shows that the jurors agreed to have the defendant present and questioned him. After the recess, given the option of continuing the hearing or voting on whether to indict, the grand jury voted, by an overwhelming majority, to close the testimony and vote on the indictments. There is no indication in the record that any juror had additional questions for the defendant. The claim of prosecutorial interference is simply not supported by the evidence. See *Commonwealth* v. *Lincoln,* 368 Mass. 281, 284-285 (1975); *Commonwealth* v. *Dilone,* 385 Mass. 281, 284 (1982); *Commonwealth* v. *Minkin,* 14 Mass. App. Ct. 911, 913 (1982). Contrast *Commonwealth* v. *Manning,* 373 Mass. 438 (1977); *Commonwealth* v. *O'Dell,* 392 Mass. 445 (1984).

2. *Sufficiency of the evidence.* At the close of the Commonwealth's case, the defendant moved for required findings of not guilty. The trial judge denied the motion. In reviewing the denial of the motion, "we must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient, as to each [count] to permit the [judge] to infer the existence of the essential elements of the crime charged in that [count]".[4]

---

[3] The prosecutor's examination of the defendant is set forth on about forty-one pages of transcript. The grand jurors asked the defendant twenty-nine questions. The investigation took place over approximately six weeks. The entire transcript of the minutes of the grand jury proceedings comprises approximately 120 pages; twelve witnesses testified.

[4] "[W]e consider only the evidence introduced up to the time that the Commonwealth rested its case. . . ." *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). The defendant did not renew his motion for required findings at the close of all the evidence. However, we have reviewed all of the evidence and conclude that the Com-

*Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). "Additionally, the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'" *Commonwealth* v. *Hunter,* 18 Mass. App. Ct. 217, 218 (1984), quoting from *Commonwealth* v. *Latimore, supra* 677. Moreover, "[t]he inferences need not be inescapable or necessary, so long as they are reasonable, possible and not unwarranted because too remote. Convictions may rest entirely or mainly on circumstantial evidence . . . but 'no essential element of the crime may rest on surmise, conjecture, or guesswork'" (citations omitted). *Commonwealth* v. *Walter,* 10 Mass. App. Ct. 255, 257 (1980), quoting from *Commonwealth* v. *Kelley,* 359 Mass. 77, 88 (1971).

The evidence presented by the Commonwealth consisted of the testimony of ten successful public housing applicants, two alleged intermediaries, two LHA employees, and the Lawrence police chief, together with records from the LHA tenant selector's office. From March 21, 1980, to July 28, 1981, the defendant was employed as the tenant selector for the LHA. He was solely responsible for supervising the application process and assigning apartments to applicants. An applicant would only be eligible for a vacant apartment in the order his or her name was on the register list.[5] Despite a lengthy waiting list,[6] the applicants in this case were promptly placed in Lawrence public housing upon payment to one of the three men — Andreas Queazada, Vincente Caminero, and Virgilio Herrera — who acted as intermediaries between the Spanish-speaking applicants and the defendant.[7]

On two counts there was direct evidence of monetary payments to the defendant in violation of G. L. c. 268A, § 3(*b*). Specifically, Queazada testified that he gave the defendant $100 for the placement of Jose Aponte (count three)[8] and $250 for the placement of Martina Mejias (count four), and that he informed the defendant of the source of the payments. In addition, the Lawrence police chief testified that the defendant had told him

monwealth's case did not deteriorate between the time it rested and the close of the evidence. See *id.* at n.1; Mass.R.Cirm.P. 25(a), 378 Mass. 896 (1979).

[5] When a person applied for housing to LHA, the application form was filled out by the defendant or his administrative assistant. The application would be assigned a number calculated on the basis of the date of the application and the number of bedrooms required to house the applicant's family.

[6] In 1980 and 1981, the waiting period for a one-bedroom apartment was approximately three years. For a two, three, or four-bedroom apartment, the wait was approximately four to five years.

[7] Neither the defendant nor anyone else in his office could speak Spanish.

[8] In July of 1981, Aponte gave Queazada $300. One or two days after this payment, Queazada accompanied Aponte to the defendant's office, at which time the defendant assigned an apartment to Aponte.

that Caminero had given the defendant marijuana and money.[9] Caminero testified that he had asked the defendant for apartments for several friends in need. Although the testimony is unclear as to when Caminero gave the defendant drugs and money, it could be inferred that they were given as a bribe in connection with the assignment of apartments.[10]

While there was no direct evidence of payoffs to the defendant on the remaining counts, the Commonwealth introduced ample evidence from which the fact finder could conclude that the defendant had acted in violation of G. L. c. 268A, § 3(b). Specifically, the applications of Rolando Gil (count one), Alcibiades Cabrera (count two) and Yilda Cruz (count seven), which were completed by the defendant, had been backdated either to a date when the defendant was not employed at LHA or prior to the time of the applicant's entry into the United States. On all the evidence the judge could reasonably infer that the defendant received payment for the placement of these applicants and that he altered the records to cover up his activities. See *Commonwealth* v. *Borans,* 379 Mass. 117, 120 (1979). In addition, Gil, Cabrera, and Candita Vasquez (count eleven) were ineligible for public housing in Lawrence due to their single status. Although he had been informed of their status, the defendant approved their applications. See *Commonwealth* v. *Kelley,* 359 Mass. at 91 (inferences suggested from particular evidence may be reinforced by other facts in evidence); *Commonwealth* v. *Dutney,* 4 Mass. App. Ct. 363, 368-369 (1976) (same). Furthermore, the defendant initially told several applicants[11] that they had a lengthy wait for an apartment. However, shortly after these applicants paid money to either Queazada or Herrera, the defendant assigned apartments to them.

Finally, the evidence, as a whole, points to the existence of a common scheme for the collection of bribes from Spanish-speaking applicants. The defendant did not request that the evidence on each count be admissible on that count only. In any event, on each count and, in particular on the three counts where the evidence, standing alone, was arguably thin,[12] evidence of similar acts involved in the other counts could have been considered with reference to a common scheme and the defendant's intent in assigning the apartments. See *Commonwealth* v. *Stone,* 321 Mass. 471, 473-474

[9] At trial, Caminero denied that he gave the defendant any money. Caminero admitted that he had received money from Rolando Gil (count one) and Antonio Delacruz (count five) for assisting these applicants in obtaining apartments. Caminero testified that he received this money for "the time we put into this," explaining, "[W]e are not going to do this for free."

[10] Under G. L. c. 268A, § 3(b), it matters not whether payments were made before or after the placement of tenants. See note 1, *supra*; *Commonwealth* v. *Dutney,* 4 Mass. App. Ct. 363, 375 n.14 (1976).

[11] Ana Triana (count eight), Yilda Cruz (count seven), and Candita Vasquez (count eleven). The latter two applicants were told they had a four or five-year wait.

[12] On counts six, nine and twelve, the evidence was that the applicants paid money to the intermediaries and were subsequently assigned apartments by the defendant.

(1947); *Commonwealth* v. *Butynski,* 339 Mass. 151, 152 (1959); *Commonwealth* v. *Baldassini,* 357 Mass. 670, 677-679 (1970); *Commonwealth* v. *Campbell,* 371 Mass. 40, 42-43 (1976); *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979); *Commonwealth* v. *Schoening,* 379 Mass. 234, 242 (1979); *Commonwealth* v. *Silva,* 388 Mass. 495, 507 (1983); *Commonwealth* v. *Edgerly,* 6 Mass. App. Ct. 241, 252 (1978); *McGaffigan* v. *United States,* 359 F.2d 422 (1st Cir. 1966); *United States* v. *Umans,* 368 F.2d 725, 730 (2d Cir. 1966); Liacos, Massachusetts Evidence 420-422 (5th ed. 1981 & Supp. 1983). See also Fed.R.Evid. 404(b); Proposed Mass.R.Evid. 404(b).

The evidence and the reasonable inferences, when viewed in the light most favorable to the Commonwealth, were sufficient to find guilt beyond a reasonable doubt. There was no error in the denial of the motion for required findings of not guilty.

*Judgments affirmed.*

*Richard K. Donahue* for the defendant.
*Lila Heideman,* Assistant District Attorney, for the Commonwealth.