**UNITED STATES of America**

**v.**

**Tullio COSTARELLI, Defendant.**

**No. 87 CR 788.**

United States District Court,
E.D. New York.

April 19, 1988.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Edward A. McDonald, Attorney-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, E.D.N.Y. (Matthew Brief, Sp. Atty., of counsel), for the government.

Michael S. Washor, Washor, Greenberg & Washor, New York City, for defendant.

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant moves pursuant to Fed.R. Crim.P. 12 for an order dismissing this indictment. For the reasons discussed below, the motion is denied.

FACTS

On March 25, 1985, the defendant was served with a subpoena to testify before a Grand Jury empanelled in this district. In anticipation of the defendant's invoking his fifth amendment privilege, the government, on March 21, 1985, sought and obtained an order of immunity pursuant to 18 U.S.C. § 6003. Prior to the issuance of the Grand Jury subpoena, the defendant was served an inventory pursuant to 18 U.S.C. § 2518(8)(d) advising him that orders authorizing the interception of wire communications between November 9, 1981 and July 7, 1982 had been obtained and that oral and

wire communications, in fact, were intercepted during that period.

The defendant was scheduled to appear before the Grand Jury on April 12, 1985. Prior to the proceedings, the defendant sought disclosure of both the wiretap orders and his intercepted wire and oral communications. The Honorable Henry Bramwell of this Court denied this relief. The defendant's testimony before the Grand Jury subsequently commenced. The Assistant United States Attorney ("AUSA"), Laura Ward, explained the scope of the Grand Jury investigation. AUSA Ward then elicited pedigree information from the defendant. When the defendant was asked whether he knew what a loanshark was, he invoked his fifth amendment privilege against self-incrimination. AUSA Ward then advised the defendant and read into the record the immunity order the government had obtained on March 21, 1985. She also advised the defendant that the immunity order did not extend to "any lies or false statements." Transcript of Grand Jury Proceedings, April 12, 1985, at 13.

On April 12, 1985, the defendant testified that he never borrowed money from a loanshark; that he did not know of anyone who borrowed money from a loanshark; that he has known of only one person named Varricchio who was regarded as a loanshark; and that he borrowed money only from banks or relatives and the relatives did not charge interest. *Id.* at 14–17. The defendant also testified about his knowledge of certain terms used by members of organized crime. *Id.* at 17–19. The defendant further testified that at one time he was a heavy better at OTB, but that he has not placed any bets in two years. *Id.* at 20–27. He also testified that he did not place bets with bookmakers, and the only bookmaker he knew was one DeFelice. *Id.* at 27–28.

The defendant was directed, and did appear before the Grand Jury again on April 23, 1985 and April 30, 1985. At the continued proceedings the defendant reaffirmed the above statements, claiming that he never borrowed money from individuals, specifically from one Joey Scopo, where he was required to pay interest on the loan.

## DISCUSSION

■ The defendant moves to dismiss the indictment on the ground that the AUSA "entrapped" and "baited" him into committing perjury; failed to adequately advise and admonish him of the recantation provisions of the perjury statute; and propounded questions that were unclear and subject to more than one interpretation. The defendant also claims that his responses to the questions were literally true, "although arguably misleading by negative implication," and that the responses were taken in isolation rather than in reference to the questions they purported to answer.

Dismissal of an indictment is " 'the most drastic remedy' " *United States v. Dyman,* 739 F.2d 762, 768 (2d Cir.1984) (quoting *United States v. Romano,* 706 F.2d 370, 374 (2d Cir.1983)) and " 'is justified to achieve either of two objectives: to eliminate prejudice to a defendant; or, pursuant to [the Court's] supervisory power, to prevent prosecutorial impairment of the Grand Jury's independent role.' " *Dyman, supra,* 739 F.2d at 786 (quoting *United States v. Hogan,* 712 F.2d 757, 761 (2d Cir.1983)).

In support of his claim that the government's procedures and tactics were inherently unfair and designed as a "perjury trap," the defendant points to five separate circumstances, which, taken together, allegedly denied him due process. These five circumstances include the government's possession of tapes of defendant's intercepted conversations; an order of immunity obtained prior to the issuance of a subpoena for the defendant's testimony; the government's opposition to defendant's application to reveal the wiretap orders and the contents of his conversations prior to his Grand Jury appearance; the questions posed by AUSA Ward related to events transpiring up to four years prior to the testimony; and finally, AUSA Ward never advised the defendant of the recantation provision of 18 U.S.C. § 1623. None of these claims has merit.

First, the fact that the government obtained an order of immunity before the defendant testified is of no consequence. The very wording of 18 U.S.C. § 6003(a) authorizes such an order before the testimony begins. *See* 18 U.S.C. § 6003(a) (authorizing an immunity order "[i]n the case of any individual who has been or *may be called to testify* ... before ... a grand jury of the United States").

Second, there was nothing improper in the prosecutor's propounding questions relating to events that had transpired four years prior to the testimony. As explained to the defendant at the commencement of his first grand jury appearance, the grand jury was investigating a wide variety of illegal racketeering activities. Any activity falling within the applicable statute of limitations was fair game for questioning before the Grand Jury. If the defendant was unable to recall the event in question, he had only to say so.

■ As to the recantation argument, 18 U.S.C. § 1623(d), provides that "[w]here, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration had not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed." There is, however, no duty to warn a defendant about his right of recantation under this section. *United States v. Doulin,* 538 F.2d 466, 471 n. 4 (2d Cir. 1976), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); *United States v. DelToro,* 513 F.2d 656, 666 (2d Cir.1975);

*United States v. Cuevas,* 510 F.2d 848, 851 (2d Cir.1975). As the defendant concedes, he was warned about the consequences of perjurious testimony. His knowledge about his obligation to tell the truth was, therefore, clear. The prosecutor's failure to advise the defendant that he could recant perjurious testimony is not, as the defendant argues, a violation of due process. *See United States v. Scrimgeour,* 636 F.2d 1019, 1026 (5th Cir.1981); *Cuevas, supra,* 510 F.2d at 851–52.

I have considered the remaining circumstances that defendant alleges were "inherently unfair so as to constitute a violation of the Due Process Clause of the Fifth Amendment" and find that they are at least as meritless as the issues discussed above. In sum, I find that none of the circumstances either together or in isolation warrant dismissal of the indictment.

■ The defendant's alternative ground for his motion to dismiss the indictment is his assertion that his responses to the questions put to him before the Grand Jury were literally true and not perjurious. A "literally true but unresponsive answer" is not proscribed by the perjury statute. *Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973). The government charges, however, that with respect to each specified falsity alleged in the indictment, the question was clear and the answer was literally and actually false.[1] Although the defendant baldly asserts in his moving papers that his answers were true, this issue is obviously a matter to be decided at trial either by the court on a motion pursuant to Fed.R. Crim.P. 29 or by the jury. At this point,

---

1. The defendant was asked specifically in the first specification, if *he* ever paid interest to anyone and he replied "not to his knowledge." Indictment, p. 3. In the second specification, the defendant testified "I have never borrowed money where I paid interest on it to anyone." *Id.* In the third specification, the defendant stated that he, "never borrowed shylock money and never paid vigorish to anyone." *Id.,* p. 4.

Regarding these specifications, the government claims that it will prove beyond a reasonable doubt that the defendant did borrow money from individuals on which he paid interest or "vigorish."

The defendant also states as a supposed fact that he was not a borrower of any "unsurious" loan from Joey Scopo. The fourth specification is the defendant's testimony that he never borrowed any money from Joey Scopo and the fifth is that he never borrowed "the money" i.e., the $20,000 that he owed Joey Scopo. *Id.* The government claims that it will also prove beyond a reasonable doubt at trial that the defendant borrowed the aforementioned money from Joey Scopo.

**38**

the Court is unable to discern anything tricky in the prosecutor's questions or anything unresponsive but literally true in the defendant's answers.

After reviewing the transcripts of the grand jury proceedings, I conclude that defendant's final argument, that responses were taken in isolation rather than in reference to the questions they purported to answer, is similarly without merit.

## CONCLUSION

Accordingly, defendant's motion for an order dismissing the indictment pursuant to Rule 12 is denied.

SO ORDERED.